2016 IL App (2d) 150172
No. 2-15-0172
Opinion filed March 21, 2016

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| NORTHERN ILLINOIS SERVICE COMPANY, | ) ) ) | Petition for Review from the Illinois Pollution Control Board. |
| Petitioner, | ) ) | |
| v. | ) ) | PCB No. AC 12-51 |
| THE ILLINOIS ENVIRONMENTAL PROTECTION AGENCY and THE POLLUTION CONTROL BOARD, | ) ) ) ) ) | |
| Respondents. | ) | |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices McLaren and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    The Illinois Pollution Control Board (PCB) issued an opinion finding that petitioner, Northern Illinois Service Company, committed three violations of the Illinois Environmental Protection Act (Act) (415 ILCS 5/1 *et seq.* (West 2012)). The PCB found that petitioner (1) caused or allowed open dumping of waste that resulted in litter (415 ILCS 5/21(p)(1) (West 2012)); (2) caused or allowed open dumping of waste that resulted in the deposition of construction or demolition debris (415 ILCS 5/21(p)(7) (West 2012)); and (3) caused or allowed the accumulation of water in used or waste tires (415 ILCS 5/55(k)(1) (West 2012)). Ordinarily, each violation would be punishable by a civil penalty of $1,500, but based on petitioner's prior

violations of sections 21(p)(1) and 21(p)(7), the PCB imposed a civil penalty of $7,500, plus hearing costs. Petitioner appeals, challenging the PCB's findings of the three violations. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On May 7, 2012, the Illinois Environmental Protection Agency (IEPA) filed an administrative citation against petitioner alleging open dumping and accumulation of water in used or waste tires at petitioner's facility at 4781 Sandy Hollow Road in Rockford. Petitioner is a contractor that does construction and demolition work, serving excavation sites, demolition sites, and utilities. Petitioner stores materials and equipment, including trucks and other vehicles, on its property. Petitioner also operates a concrete-recycling facility on its property, which is 20 to 30 acres and contains an 80,000-square-foot building.

¶ 4     The administrative citation was based on a March 14, 2012, inspection by Donna Shehane, a field inspector with the IEPA. At the southwest corner of the site, Shehane photographed four large off-rim used tires, two of which had accumulated water. She also photographed on-rim used tires hooked together with chains, and a pile of used material on the ground. On June 11, 2012, petitioner petitioned to contest the citation.

¶ 5     On November 20, 2014, the PCB issued an interim order consistent with the citation, finding that petitioner had violated sections 21(p)(1), 21(p)(7), and 55(k)(1) of the Act. 415 ILCS 5/21(p)(1), 21(p)(7), 55(k)(1) (West 2012). The interim order summarizes the testimony of Shehane and two employees of petitioner, Paul Munson and William Hoff. Shehane testified that, on March 14, 2012, she inspected the site as a follow-up to an administrative citation warning notice she had previously issued to petitioner. Munson, a project manager for

petitioner, and Hoff, a superintendent for petitioner, were at the site, but they did not accompany Shehane during the inspection.

¶ 6                                    A. Pile of Material

¶ 7     Shehane testified that a large pile of material was on the ground, not inside any container, and did not appear intended or preserved for a future use or imminent disposal.  Shehane had previously observed a similar pile on the site during inspections on December 7, 2011, and September 15, 2009.

¶ 8     Petitioner admitted in an interrogatory that it was the source of the material in the photographed pile, the material depicted in the pile had been "collected for a matter of weeks," and some of the material on the property was brought from various job sites.  Munson stated in a deposition that he told employees not to leave material on the ground and that the pile had been removed sometime after the inspection.

¶ 9     Munson testified that the pile included pallets, dimensional lumber, plastic, plastic pipe, and brick.  Hoff testified that the pile also included PVC pipe, packaging materials, silt fence from excavation sites, packaging and wood materials from job sites, and plastic visqueen.  Hoff testified that the material had been on the property for not more than a month or two.  Hoff also stated that the materials in the pile were not intended to be disposed of at the site, but rather came from a truck and placed in a pile so petitioner "could dispose of them properly."  Hoff denied that the material was demolition debris.  Hoff explained that material such as that in the pile is regularly taken to a landfill, but not until the pile is large enough to justify a trip.  Petitioner produced receipts from landfills to show that it had removed waste from its property.

¶ 10                                   B. Tires

¶ 11    Petitioner also admitted in an interrogatory that the tires depicted in Shehane's photographs had been taken off petitioner's equipment.  The tires that were not chained had accumulated water.  Following the inspection, Munson directed an employee to shake out the water and stack and cover the tires.  Hoff testified that the tires that had accumulated water were to be used as bases and filled with concrete for temporary light poles or power poles or kept as replacement tires in the event of a flat.

¶ 12    Shehane testified that nothing indicated to her that the tires were to be used as part of poles.  She also testified that the tires were not covered or protected from the weather.  After the inspection, the tires were disposed of at a tire-disposal facility.

¶ 13                              C. PCB Findings

¶ 14                      1. Cause or Allow Open Dumping of Waste

¶ 15    The PCB found that the IEPA had proved that petitioner caused or allowed open dumping of waste under the Act.  415 ILCS 5/21(a), 21(p)(1), 21(p)(7) (West 2012).  The PCB noted that petitioner did not dispute that it owned and operated the property and was responsible for bringing the used tires and other material to the site.

¶ 16    At issue was whether petitioner's placement of the material in a pile was "open dumping of waste."  Section 3.305 of the Act defines "open dumping" as "the consolidation of refuse from one or more sources at a disposal site that does not fulfill the requirements of a sanitary landfill." 415 ILCS 5/3.305 (West 2012).  "Refuse" means "waste" (415 ILCS 5/3.385 (West 2012)), and "waste" includes "garbage *** or other discarded material" (415 ILCS 5/3.535 (West 2012)).

¶ 17    In finding acts of "open dumping," the PCB rejected petitioner's claim that the pile of material observed during the inspection was being temporarily stored at the site as part of a plan to dispose of it at a landfill.  The PCB cited the testimony of Munson and Hoff that some of the

material was generated off site and brought to the property. Specifically, Hoff identified packaging material and scrap pipe from job sites, silt fence from excavation sites, packaging and wood from excavation sites, and plastic pipe from another excavation job. Petitioner was the source of the material, some of which was generated off site, and at the time of the inspection, the property was not a sanitary landfill and petitioner did not have a permit to operate as a waste transfer station.

¶ 18 The PCB concluded that petitioner's placement of material on the ground without a container or protective covering was visual evidence of petitioner's lack of intent to use the material in the future. The PCB also pointed out that the material was subsequently dumped in a landfill.

¶ 19 The PCB rejected petitioner's claim that it had not "disposed" of the material by placing it on the ground, citing the definition of "disposal" as the "deposit, *** dumping, *** or placing of any waste or hazardous waste into or on any land *** so that such waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 415 ILCS 5/3.185 (West 2012). The PCB concluded that petitioner "disposed" of the material by bringing it to the property and placing it on the ground, uncovered, and exposed to the environment. The PCB also found that the debris in the pile constituted "waste" under the Act because it consisted of "any garbage *** or other discarded material." 415 ILCS 5/3.535 (West 2012).

¶ 20 Once the PCB determined that petitioner had caused or allowed the open dumping of waste, it also found that the dumping resulted in litter and the deposition of construction or demolition debris.

¶ 21    On January 22, 2015, the PCB entered an opinion and final order incorporating the findings set forth in the interim order.  The PCB assessed a statutory civil penalty of $7,500 for the three violations and hearing costs of $1,249.  On February 23, 2015, petitioner filed a timely petition for review in this court.

¶ 22                    2. Water Accumulation in Used or Waste Tires

¶ 23    Finally, the PCB found that petitioner had allowed water accumulation in used or waste tires on the property, in violation of section 55(k)(1) of the Act.  Section 55(k)(1) prohibits any person from causing or allowing water to accumulate in used or waste tires.[1]  415 ILCS 5/55(k)(1) (West 2012). "Used tire" means a worn, damaged, or defective tire that is not mounted on a vehicle.  415 ILCS 5/54.13 (West 2012).  "Waste tire" means a used tire that has been disposed of.  415 ILCS 5/54.16 (West 2012).

¶ 24    The PCB noted Shehane's testimony that she had observed a stack of four off-rim tires, with two tires containing water.  She described the tires as worn, dirty, and not covered or otherwise protected from the weather.

¶ 25    Hoff admitted that none of the tires were new or mounted on a vehicle.  He explained that they were either chained to a demolition ball as shock absorbers, kept for future use as shock absorbers, or accumulated from demolition sites.  Some of the tires were not in condition to be used again.

¶ 26    The PCB found the tires with water to be used tires under section 54.13 of the Act.  The PCB rejected petitioner's claim that the tires were not "used tires" because they were

_____

    [1] The prohibition does not apply to used or waste tires located at a residential household, as long as not more than 12 used or waste tires are located at the site.  Petitioner does not contend that the residential household exception applies to its site.

occasionally put to use on petitioner's equipment. The PCB noted that the photograph showed tires that were not attached to any equipment or used in any way, like as a base for a pole. Petitioner admitted moving them to a tire-disposal facility after the inspection, which indicated petitioner had not intended to use them.

¶ 27 The PCB noted that section 55(k)(1) does not provide a minimum period for what constitutes a violation. Considering there was no dispute that, at the time of the inspection, the tires were present, the tires were used, and the tires had accumulated water, the PCB found a violation of section 55(k)(1).

¶ 28 D. Civil Penalty and Hearing Costs

¶ 29 In an administrative citation action under the Act, any person found to have violated any subsection of section 21(p) shall pay a civil penalty of $1,500 for each violation of each subsection, except the civil penalty amount shall be $3,000 for each violation of any subsection of section 21(p) that is the person's second or subsequent adjudicated violation of that provision. 415 ILCS 5/42(b)(4-5) (West 2012).

¶ 30 The PCB had previously found petitioner in violation of sections 21(p)(1) and 21(p)(7) in 2007, and therefore, the current violations made petitioner subject to two $3,000 penalties. The violation of section 55(k)(1) made petitioner subject to an additional $1,500 penalty. Accordingly, the PCB imposed a total civil penalty of $7,500, plus appropriate hearing costs. Petitioner does not challenge the calculation of the penalty or hearing costs on appeal.

¶ 31 II. ANALYSIS

¶ 32 A. Standard of Review

¶ 33 Based on Shehane's inspection report with photographs, the IEPA issued the administrative citation alleging violations of section 21(p)(1), 21(p)(7), and 55(k)(1), and the

PCB found those violations following a hearing. On appeal from the PCB's findings, petitioner argues that the PCB's opinion is subject to *de novo* review because "the material facts in connection with this issue are undisputed." We disagree.

¶ 34    Section 41(b) of the Act provides that a final order of the PCB issued under the Act shall be based solely on the evidence in the record of the particular proceeding involved. 415 ILCS 5/41(b) (West 2012). On appeal, petitioner essentially quarrels with the PCB's evaluation of the evidence, which presents questions of fact on review. Section 41(b) provides that the PCB's order should be found invalid on judicial review only if the order is against the manifest weight of the evidence. See 415 ILCS 5/41(b) (West 2012). "A factual finding is contrary to the manifest weight of the evidence when, upon a review of all the evidence in the light most favorable to the prevailing party, the opposite conclusion is clearly apparent or the fact finder's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence." *United States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 461 (2008). We adhere to that standard in this appeal.

¶ 35                                    B. Section 21(p)

¶ 36                         1. Cause or Allow Open Dumping of Waste

¶ 37    The PCB found that petitioner caused or allowed open dumping of waste under section 21(p) of the Act. There is no dispute that petitioner "caused or allowed" the alleged dumping because it owned and operated the property and was responsible for bringing the pile of material to the site. However, petitioner argues that (1) there was no "open dumping" because petitioner had a plan and practice to dispose of the material elsewhere; (2) there was no "disposal" on the

property because the material was confined to one area; and (3) the material in the pile does not meet the statutory definition of "waste."

¶ 38    As the PCB observed, section 3.305 of the Act defines "open dumping" as "the consolidation of refuse from one or more sources at a disposal site that does not fulfill the requirements of a sanitary landfill." 415 ILCS 5/3.305 (West 2012). "Refuse" means "waste" (415 ILCS 5/3.385 (West 2012)), and "waste" includes "garbage *** or other discarded material" (415 ILCS 5/3.535 (West 2012)).

¶ 39    In finding an act of "open dumping," the PCB rejected petitioner's claim that the pile of material observed during the inspection was being temporarily stored at the site as part of a plan to dispose of it in a landfill. Munson and Hoff admitted that some of the material was generated off site and brought to the property, and petitioner disposed of the material in a landfill after the inspection. Petitioner was the source of the material, some of which was generated off site, and at the time of the inspection, the property was not a sanitary landfill and petitioner did not have a permit to operate as a waste transfer station.

¶ 40    Petitioner's ultimate disposal plan was not certain as it failed to present a time frame for gathering material and transporting it to a landfill. Petitioner's exhibits showed that it transferred material from its property to licensed disposal sites over sporadic intervals, from one week up to 16 months. To allow such a vague, future intent to stand as a certain plan for disposal in a landfill would tend to negate regulation of this area. See *People ex rel. Madigan v. Lincoln, Ltd*., 383 Ill. App. 3d 198, 208 (2008) (allowing any landfill operator with future intention for a site to avoid meaningful regulatory oversight would negate landfill regulation).

¶ 41    The PCB also rejected petitioner's claim that it had not "disposed" of the material at the site by placing it on the ground, citing the definition of "disposal" as the "deposit, *** dumping,

\*\*\* or placing of any waste or hazardous waste into or on any land \*\*\* so that such waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 415 ILCS 5/3.185 (West 2012). The PCB concluded that petitioner "disposed" of the material by bringing it to the property and placing it on the ground, uncovered, and exposed to the environment. Petitioner did not treat the pile of debris like material that it intended to use.

¶ 42    Petitioner cites *County of Madison v. Abert*, Ill. Pollution Control Bd. Op. 91-55 (Dec. 17, 1992), for the proposition that petitioner was not required to place the material in containers and no disposal occurred on the property because petitioner intended to dispose of the material in a landfill in the future. In *Abert*, waste was improperly disposed of by burning it, and the site owner was cited for open dumping of waste resulting in litter. The PCB stated that, to avoid the violation, "a person need not place the waste directly in containers, as long as the waste is disposed of properly before the area where it is stacked becomes a disposal site." *Id.* at 5. Petitioner's reliance on *Abert* is misplaced, as the PCB found in that case that the owner's intent to take the waste to a landfill was relevant in determining whether the owner knew of the illegal disposal by burning. *Id.* at 4-5. Here, petitioner knew the pile was on the ground and no definite plan or policy was in place for its removal. *Abert* is further distinguishable in that the burning of waste occurred on the day it was piled outside, and the PCB did not address how much time must pass before the placement of waste becomes a disposal site. *Id.* at 5.

¶ 43    In this case, the debris in the pile constituted "waste" under the Act because it consisted of "any garbage \*\*\* or other discarded material." 415 ILCS 5/3.535 (West 2012). The PCB's finding of causing or allowing the open dumping of waste is not against the manifest weight of the evidence.

¶ 44                                2. Litter

¶ 45    Specifically, the PCB found a violation of section 21(p)(1), which prohibits any person from causing or allowing the open dumping of any waste in a manner which results in "litter" at the dump site. 415 ILCS 5/21(p)(1) (West 2012). Petitioner argues that the material in the pile was not "litter" because it was not discarded.

¶ 46    The Act does not define litter, but the PCB relied on its prior holding that it means "discarded, used, or consumed substance or waste." Given its ordinary meaning, litter refers to "material of little or no value which has not been properly disposed of." *Miller v. Pollution Control Board*, 267 Ill App. 3d 160, 169 (1994). Both definitions are consistent with the definition of waste under section 3.535 of the Act. The PCB credited Shehane's testimony that the pile of material qualified as litter because it was not covered or otherwise protected from the weather and no present or future use was apparent. The finding that the material constituted litter is not against the manifest weight of the evidence.

¶ 47                  3. Deposition of Construction or Demolition Debris

¶ 48    The PCB also found a violation of section 21(p)(7), which prohibits any person from causing or allowing the open dumping of any waste in a manner which results in "deposition of (i) general construction or demolition debris as defined in Section 3.160(a) of this Act or (ii) clean construction or demolition debris as defined in Section 3.160(b) of this Act." 415 ILCS 5/21(p)(7) (West 2012).

¶ 49    Hoff admitted in his deposition that the photograph showed silt fencing, wood material from excavation sites, and plastic pipe from an excavation job. Hoff further admitted that the pile contained a large piece of lumber and concrete or stone brick. The PCB found that these

materials constituted general construction or demolition debris. The PCB also found that the items constituted waste that had been open-dumped at the site.

¶ 50  "General construction or demolition debris" means non-hazardous, uncontaminated materials resulting from the construction, remodeling, repair, and demolition of utilities, structures, and roads, limited to the following: bricks, concrete, and other masonry materials; soil; rock; wood, including non-hazardous painted, treated, and coated wood and wood products; wall coverings; plaster; drywall; plumbing fixtures; non-asbestos insulation; roofing shingles and other roof coverings; reclaimed or other asphalt pavement; glass; plastics that are not sealed in a manner that conceals waste; electrical wiring and components containing no hazardous substances; and corrugated cardboard, piping, or metals incidental to any of those materials. 415 ILCS 5/3.160(a) (West 2012).

¶ 51  Petitioner argues that section 3.160(a) applies only to material that is generated from construction or demolition activities and not to petitioner's supplies and equipment, which "existed totally apart from the physical objects to which they were applied." Petitioner attempts to narrowly define "construction or demolition debris" as simply the physical remains of buildings and roads, to the exclusion of other debris used on the job. Petitioner's interpretation of the Act is strained and impractical. Work at construction and demolition sites results in the commingling of debris from existing structures as well as material, supplies, and equipment brought in by contractors. All the material is waste that is ultimately destined for a landfill. To narrowly define construction or demolition debris only as material originating at the site and not including outside material that is commingled with it would be an absurd result. The PCB's finding that at least some of the material in the pile was construction or demolition debris is not against the manifest weight of the evidence.

¶ 52                                    C. Section 55(k)(1)

¶ 53     Finally, the PCB found a violation of section 55(k)(1), which prohibits any person from causing or allowing water to accumulate in used or waste tires. The PCB determined that the tires with accumulated water qualified as "used tires," which means a worn, damaged, or defective tire that is not mounted on a vehicle. 415 ILCS 5/54.13 (West 2012). Petitioner argues that the tires were " 'reused' because the uncontradicted facts show they were used as tools and supplies in [petitioner's] business, *i.e.*, as spares, bases for lights and power, and shock absorbers in demolition activities."

¶ 54     Following the inspection, Munson directed an employee to shake out the water and stack and cover the tires. Hoff testified that the tires with water were intended to eventually be used as bases for temporary poles or kept as spares. However, Shehane testified that nothing indicated to her that the tires were to be used as part of poles. She also testified that the tires were worn and not covered or otherwise protected from the weather. The PCB noted that the photograph showed tires that were not attached to any equipment or used in any way, like as a base for a pole. Petitioner admitted moving them to a tire-disposal facility after the inspection, which tends to refute petitioner's claim that they would be put to use. Regardless, to allow a statement of future intent to absolve a violation would render the Act's regulatory function relatively useless. See *Lincoln*, 383 Ill. App. 3d at 208.

¶ 55     The PCB correctly pointed out that section 55(k)(1) does not provide a minimum period for what constitutes a violation. Considering there was no dispute that, at the time of the inspection, the tires were present, the tires were used, and the tires had accumulated water, the PCB found a violation of section 55(k)(1), and that determination is not against the manifest weight of the evidence.

¶ 56                                    III. CONCLUSION

¶ 57    For the reasons stated, the final order of the PCB finding violations of sections 21(p)(1),

21(p)(7), and 55(k)(1) of the Act is affirmed.

¶ 58    Affirmed.